IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-00972-CMA-NRN

EIGHTH DISTRICT ELECTRICAL PENSION FUND,
EIGHTH DISTRICT ELECTRICAL PENSION FUND ANNUITY PLAN,
JAMES MANTELE, as Chairman of the Delinquency Committee for the Eighth District Electrical Pension Fund and Eighth District Electrical Pension Fund Annuity Plan,
NATIONAL ELECTRICAL BENEFIT FUND, and
MOUNTAIN STATES LINE CONSTRUCTORS AREA JOINT APPRENTICESHIP AND TRAINING TRUST FUND,

    Plaintiffs,

v.

POWER FOUNDATIONS, LLC,

    Defendant.

## ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

This matter is before the Court on Plaintiffs Eighth District Electrical Pension Fund, Eighth District Electrical Pension Fund Annuity Plan, James Mantele, National Electrical Benefit Fund, and Mountain States Line Constructors Area Joint Apprenticeship and Training Trust Fund's Motion for Entry of Default Judgment Against Defendant Power Foundations, LLC. (Doc. # 16.) Defendant has not responded to Plaintiffs' Motion.[1] For the reasons that follow, the Court grants Plaintiffs' Motion.

---

[1] The Court notes that Brinton Shaw, who is the registered agent and sole member of Defendant submitted a letter on October 29, 2019. (Doc. # 18.) However, "a corporation or other business entity can only appear in court through an attorney and not through a non-attorney corporate officer appearing pro se." *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 556 (10th Cir. 2001)

I. **BACKGROUND**

Plaintiffs bring this suit to collect delinquent fringe benefit contributions from Defendant pursuant to the Employee Retirement Income Security Act ("ERISA") and collective bargaining agreements ("CBAs") with International Brotherhood of Electrical Workers Local Union No. 57 ("Local 57"). (Doc. # 1 at 1.) There are five Plaintiffs: (1) Eighth District Electrical Pension Fund ("Pension Fund"); (2) Eighth District Electrical Pension Fund Annuity Plan ("Annuity Plan"); (3) James Mantele; (4) National Electric Benefit Fund ("NEBF"); and (5) Mountain States Line Constructors Area Joint Apprenticeship and Training Trust Fund ("JATC"). (*Id.* at 2–3.) Except for Mantele, the other Plaintiffs (hereafter "Funds") are each an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(3) and a "multiemployer plan" within the meaning of 29 U.S.C. § 1002(37). (*Id.* at 2–3.) The Funds were established and operate pursuant to a written agreement and/or declaration of trust ("Trust Agreement"). (*Id.* at 4.)

Defendant Power Foundations, LLC is a limited liability company incorporated in Utah and with its principal place of business in St. George, Utah. (*Id.* at 3.) Plaintiffs assert that Defendant is an employer within the meaning of 29 U.S.C. § 1002(5). (*Id.*) Defendant has agreed to one or more CBAs with Local 57. (*Id.*) These CBAs govern the terms and conditions of employment of Defendant's employees performing work covered by the CBAs. (*Id.* at 3–4.) Plaintiffs assert that every month Defendant is

---

(citing *Flora Constr. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413, 414 (10th Cir. 1962) ("The rule is well established that a corporation can appear in a court of record only by an attorney at law.")).

2

obligated under the CBAs and Trust Agreements to "timely submit reports and fringe benefit contributions" to the Funds. (*Id.*) Payments not made by the 15th day of the following month are deemed delinquent. (*Id.*)

Plaintiffs allege that Defendant failed to make contributions to the Funds for the hours of covered work performed by its employees under the CBAs during the months of November 2017 and December 2017. (*Id.* at 4–5.) Therefore, Plaintiffs assert that Defendant effectively breached the CBAs and Trust Agreements, as well as its obligations under ERISA, 29 U.S.C. § 1145. (*Id.* at 5.) Because of this breach, Plaintiffs assert that Defendant is liable to Plaintiffs for the delinquent payments in the amount of $15,020.09, interest on the delinquent payments accruing both pre and post judgment, liquidated damages in the amount of $1,578.78, and reasonable attorney's fees. (*Id.*)

Plaintiffs filed their Complaint on April 2, 2019. (*Id.* at 1.) Plaintiffs assert that they properly served Defendant by certified mail (Doc. # 16-1); however, Defendant did not file a Response. On June 13, 2019 and June 27, 2019, Plaintiffs filed Motions for Entry of Default and Default Judgment. (Doc. ## 12, 14.) The Clerk of the Court declined to docket an Entry of Default on both occasions because Plaintiffs failed to attach proof of service of process to their Motions. (Doc. ## 13, 15.) On August 7, 2019, Plaintiffs filed a renewed Motion for Entry of Default and Default Judgment (Doc. # 16), and on August 9, 2019, the Clerk of the Court docketed an Entry of Default (Doc. # 17).

## II.     STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, courts must enter a default judgment against a party that has failed to plead or otherwise defend an action brought

3

against it. Fed. R. Civ. P. 55(b)(2). Default judgment may be entered by the clerk of court if the claim is for "a sum certain," Fed. R. Civ. P. 55(b)(1), in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

> [D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

*In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

A default amounts to an admission of liability, and all well-pleaded allegations in the complaint pertaining to liability are deemed true. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted); *Lyons P'ship, L.P. v. D&L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 109 (E.D.N.Y. 2010). "The Court also accepts as undisputed any facts set forth by the moving party in affidavits and exhibits." *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-CV-02065-RM, 2019 WL 399228, at *2 (D. Colo. Jan. 31, 2019) (citing *Purzel Video GmbH v. Biby*, 13 F. Supp. 3d 1127, 1135 (D. Colo. 2014)). It "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe*, No. 01 Civ. 3137 (HB) (FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

Additionally, courts are required to make an independent determination of the amount of damages to be awarded, unless the amount of damages is certain. *Ullico Cas. Co. v. Abba Shipping Lines, Inc.*, 891 F. Supp. 2d 4, 7 (D.D.C. 2012) (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 94 (D.D.C. 2011)). "In instances where the amount of damages is not certain, the court may hold a hearing, but is not required to do so as long as there is a basis for determining damages for purposes of the default judgment." *Id*. (citing *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160 (D.D.C. 2009)).

For instance, courts need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Eighth Dist. Elec. Pension Fund v. Campbell Elec., Inc.*, No. 16-cv-03040-CMA, 2017 WL 1243059, at *2 (D. Colo. Mar. 17, 2017) (quoting *Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)). In making an independent determination of the amount of damages, "the court may rely on detailed affidavits or documentary evidence." *Id*. (quoting *Breaking the Chain Found., Inc. v. Capitol Educ. Supp., Inc.*, 589 F. Supp. 2d 25, 28 (D.D.C. 2008)); *Lopez v. Highmark Constr., LLP*, No. 17-cv-01068-CMA-MLC, 2018 WL 1535506, at *3 (D. Colo. Mar. 29, 2018) (same).

In the context of a default judgment, a plaintiff "must . . . establish that on the law it is entitled to the relief it requests, given the facts as established by the default." *PHL Variable Ins. Co. v. Bimbo*, No. 17-CV-1290 (FB) (ST), 2018 WL 4691222, at *2 (E.D.N.Y. Aug. 30, 2018), *report and recommendation adopted*, No. 17-CV-1290 (FB) (ST), 2018 WL 4689580 (E.D.N.Y. Sept. 28, 2018) (quoting *Trs. of the Plumbers Local*

*Union No. 1 Welfare Fund v. Generation II Plumbing & Heating, Inc.*, No. 07CV5150 (SJ) (SMG), 2009 WL 3188303, at *2 (E.D.N.Y. Oct. 1, 2009)).

### III. ANALYSIS

Following a clerk's entry of default, courts follow two steps before granting default judgment. First, a court must ensure it has subject matter and personal jurisdiction. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1166 (10th Cir. 2011) (holding that default judgment against defendant over whom court has no personal jurisdiction is void). Second, courts must consider whether the well-pleaded allegations of fact—which are admitted by a defendant upon default—support a judgment on the claims against the defaulting defendant. *See Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) (plaintiff in a default action did not need to prove complaint's factual allegations; however, the judgment must be supported by a sufficient basis in the pleadings).

**A. JURISDICTION**

    1. <u>Subject Matter Jurisdiction</u>

Plaintiffs assert that the Court has federal question jurisdiction over this matter pursuant to 29 U.S.C §§ 185(c), 1132, and 1145 due to its ERISA claims. (Doc. # 1 at 3.) Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Because Plaintiffs' ERISA cause of action arises under federal law, this Court has jurisdiction.

2. <u>Personal Jurisdiction</u>

The Court must also determine that Plaintiffs have made a *prima facie* case that exercising personal jurisdiction over Defendant is proper. *Dennis Garberg and Assocs., Inc. v. Pack-Tech Int'l. Corp.*, 115 F.3d 767, 773 (10th Cir. 1997). An analysis of personal jurisdiction involves a two-step inquiry. First, the Court must determine "whether any applicable statute authorizes the service of process on [the] Defendant." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). Second, the Court must examine whether the exercise of such statutory jurisdiction comports with constitutional due process demands. *Id.*

    a. *Service of Process*

The Court must first address the adequacy of service in deciding whether it has personal jurisdiction over Defendant. *Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F. Supp. 3d 1235, 1241 (D. Colo. 2015). Plaintiffs' Complaint identifies Defendant as a corporation. (Doc. # 1 at 3.) Therefore, the Court analyzes the adequacy of service pursuant to Fed. R. Civ. P. 4(h), which establishes the requirements for service on a corporation, partnership, or association. Such an organization may be served "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(e)(1). Pursuant to Rule 4(e)(1), "[u]nless otherwise provided by federal law, service upon an individual . . . may be effected in any judicial district of the United States pursuant to the law of the state[2] in which the district court is located. . . ." *Id.*

---

[2] Because Defendant is a Utah corporation, Plaintiffs served Defendant pursuant to the procedures of Utah Code Ann. § 16-17-301(2). Section 16-17-301(2) allows service upon a corporate entity by certified mail when the registered agent cannot with reasonable diligence be

7

Additionally, in ERISA cases, federal law provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and **process may be served in any other district where a defendant resides or may be found**.

29 U.S.C. § 1132(e)(2) (emphasis added). Thus, "there is no question that the last clause of § 1132(e)(2) authorizes nationwide service of process." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000). When nationwide service of process is authorized by the governing federal statute, "it becomes the statutory basis for personal jurisdiction" provided that due process is satisfied. *Id*.

In the instant suit, Plaintiffs undoubtedly acted with reasonable diligence, and attempted to serve Defendant's registered agent both personally[3] and by certified mail. Plaintiffs attach proof of service by mail (Doc. # 16-1 at 4) and proof of their request for a return receipt (*id*. at 5) to their Motion. Plaintiffs further assert in the attached Certificate of Service that service was not only mailed to Defendant's registered agent

---

served by personal service. (Doc. # 16 at 5.) As the Court recognizes, *see infra* note 3, Plaintiffs acted with reasonable diligence in their attempts to serve Defendant's registered agent personally; therefore, service by certified mail was proper in this instance.

[3] In his affidavit, Plaintiffs' counsel states that Plaintiffs' process server unsuccessfully attempted to personally serve Defendant's registered agent on six separate occasions. (Doc. # 16-3 at 4.) Plaintiffs further attach two Affidavits of Due and Diligent Attempt to serve Defendant. (Doc. # 16-1 at 1–2.) On April 9, April 13, and April 17, 2019, Plaintiffs' process server attempted to serve Defendant's registered agent at Defendant's principal place of business but was unsuccessful. (*Id.* at 1.) On April 17, 2019, Plaintiffs' process server noted that, according to a "new resident," Defendant's registered agent "moved." (*Id.*) Thus, on April 26, April 27, and May 15, 2019, Plaintiffs' process server attempted to serve Defendant's registered agent at the registered agent's new location but was still unsuccessful. (*Id.* at 2.)

at the address listed in Defendant's Certificate of Organization (*id.* at 6–7), but also to the registered agent's new location.[4] (Doc. # 16 at 11.) Plaintiffs deposited the envelope containing service of process to the United States Postal Service on May 15, 2019. (Doc. # 16-3 at 4.) Pursuant to Fed. R. Civ. P. 5(b)(C), service is complete "upon mailing;" therefore, service was complete on May 15, 2019.

### b. Due Process

Next, the Court must consider whether exercising personal jurisdiction over Defendant would comport with due process. In federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment. *Peay*, 205 F.3d at 1210 (citing *Omni Capital Int'l., Ltd., v. Rudolph Wolff & Co.*, 484 U.S. 97, 103–04 (1987)). The Supreme Court has not yet defined Fifth Amendment due process limits on personal jurisdiction; however, "[t]he Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical," and "both were designed to protect individual liberties from the same types of government infringement." *Peay*, 205 F.3d at 1211.

To comport with due process limitations under the Fourteenth Amendment, a court may only exercise personal jurisdiction over defendants that have sufficient minimum contacts with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The "minimum contacts" test may be met in either of two ways—general jurisdiction or specific jurisdiction. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996). A court's duty is the same in either case: to guarantee that the exercise of jurisdiction "does not offend traditional notions of fair play and

---

[4] *See supra* note 3.

substantial justice." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotation omitted). Jurisdiction is proper where "actions by the defendant himself" establish a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

As pertinent in the instant suit, specific jurisdiction exists if a three part inquiry is satisfied: (1) the defendant purposefully avails itself of the privilege of acting in Colorado or of causing important consequences in the state; (2) the cause of action arises from the consequences of the defendant's in-state activity; and (3) defendant's activities, or the consequences thereof, have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Sho Servs., LLC v. China Film Grp. Corp.*, No. 17–cv–01200–CMA–KLM, 2018 WL 2183987, at *2 (D. Colo. May 11, 2018).

In the instant action, Plaintiffs have established that Defendant is subject to specific jurisdiction in Colorado. First, Defendant has purposefully availed itself of the state's laws. In evaluating purposeful availment, the Court considers the quality and nature of the contacts with Colorado. *Id.* Physical presence is not required, and a single act may be enough. *Id.* The following well pled facts are sufficient to support purposeful availment in this case:

- Defendant manifested its acceptance of the terms of the CBAs and Trust Agreements through a letter of assent. (Doc. # 1 at 3.)
- Due to the CBAs and Trust Agreements, Defendant was obligated to make monthly benefit contributions to the Funds. (*Id.* at 4.)

- Both Pension Fund and Annuity Plan are principally located in the state of Colorado. (*Id.* at 2). Furthermore, all four Funds are administered for purposes of collection in the state of Colorado. (Doc. # 16 at 3.)
- Defendant filed reports with the Funds' administrator indicating that Defendant owes contributions to the Funds for the months of November and December 2017. (Doc. # 16-4 at 3, ¶ 8.)

These facts support the conclusion that Defendant actively contracted with entities that Defendant reasonably knew were located in Colorado. Defendant knew that Plaintiffs would suffer the effect of its failure to pay fringe contributions in Colorado. Thus, Plaintiffs' well pled allegations are sufficient to support that Defendant purposefully availed itself of the forum state. *See Carpenters Sw. Admin. Corp. v. GSF Enters., Inc.*, No. SA CV 17–0115–DOC (JCGx), 2017 WL 7833775, at *4 (C.D. Cal. July 13, 2017) (finding purposeful availment in the context of a default judgment where the defendant knew that the plaintiffs would suffer the effect of its failure to pay fringe contributions in the forum state).

Second, the Court also finds that Plaintiffs' claim for relief clearly arises from the consequences in Colorado of Defendant's activities. Defendant contracted with the Funds, entities administered in Colorado, and breached those contracts by failing to produce the promised contributions. Plaintiffs assert that the breach of contract took place in the state of Colorado. (Doc. # 16 at 3.) "Defendant's breach of contract, i.e. its failure to pay, caused and is causing economic loss in Colorado." *Sho Servs.*, 2018 WL

2183987, at *3. The economic ramifications at issue here support a finding that Plaintiffs' cause of action emanates from Defendant's conduct aimed at Colorado. *Id.*

Third, the Court finds that Defendant's contacts have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable. Defendant agreed to make payments in Colorado, and its failure to do so has caused financial harm in Colorado. Ultimately, the consequences of the dispute between Plaintiffs and Defendant have a substantial enough connection with Colorado to make the exercise of jurisdiction reasonable. *Sho Servs.*, 2018 WL 2183987, at *3. The connection is not so isolated or attenuated that the establishment of jurisdiction would be unjust. *See World–Wide Volkswagen Corp.*, 444 U.S. at 299.

Pursuant to the foregoing analysis, Plaintiffs have met their burden to establish that exercising personal jurisdiction over Defendant is proper.

**B.    DEFAULT JUDGMENT**

It is manifest from the record that Defendant has defaulted. Plaintiffs served Defendant via certified mail on May 15, 2019.[5] Defendant has nevertheless failed to answer the Complaint or otherwise respond, and the time to do so has expired. *See* Fed. R. Civ. P. 12(a). The clerk, therefore, properly entered a certificate of default against Defendant. (Doc. # 17.)

2.    <u>Liability</u>

Plaintiffs seek recovery under § 515 of ERISA, 29 U.S.C. § 1145. (Doc. # 16 at 2.) Section 515 provides: "[e]very employer who is obligated to make contributions to a

---

[5] *See supra* Section III.A.2.a.

multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

"[A]ny ERISA obligations of [Defendant] flow from the existence of recognizable contractual legal obligations." *Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-CV-02065-RM, 2019 WL 399228, at *3 (D. Colo. Jan. 31, 2019) (citing 29 U.S.C. § 1132(a) ("A civil action may be brought . . . to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.")); *see also Mile High Rodbusters*, 82 F. Supp. 3d at 1240 (granting the plaintiffs' motion for default judgment and finding that defendants' delinquency pursuant to a collective bargaining agreement supported judgment on the ERISA claims). Therefore, Plaintiffs may only recover under ERISA if they have adequately alleged a violation of the CBA by Defendant.[6]

Accepting the well-pled allegations in the Complaint as true and for the reasons stated below, the Court finds that the allegations support entry of a default judgment on the ERISA claims against Defendant. Plaintiffs assert that Defendant agreed to the CBAs and Trust Agreements that obligated Defendant to pay contributions to the Funds.

---

[6] Although Plaintiffs fail to attach a copy of any of the CBAs to their briefing, when considering default judgments under ERISA, it is not "strictly necessary" to attach the CBA. This is especially true when the amount of damages alleged in the complaint are well pleaded allegations that support default. *See, e.g., Denver Marble Co.*, 2019 WL 399228, at *3; *see also Bd. of Trustees, Colo. Sheet Metal Workers' Local 9 Family Health Plan v. J & C Stainless Fabricating Co.*, No. 07-cv-01970-REB-MEH, 2009 WL 306731, at *2 (D. Colo. Feb. 6, 2009) (entering default judgment without a copy of such an agreement). Because there are no discrepancies within Plaintiffs' briefing that obfuscate the damage calculation, the Court does not require a copy of the CBAs at issue here.

(Doc. # 1 at 4–5.) Plaintiffs further assert that Defendant has failed to pay all contributions, plus accrued interest and liquidated damages, owed to Plaintiffs. *See* (*id.* at 4–6). Defendant's failure to send the required contributions and accrued interest is a breach of its obligations under the CBA and is a violation of § 515 of ERISA, 29 U.S.C. § 1145. (*Id.* at 4–5.) Under §§ 515 and 502(g) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2), Defendant is obligated to pay the full amount of its delinquent contributions under the terms of the CBA, plus interest, additional damages, and reasonable attorney's fees. (*Id.* at 5.)

Because the Court deems the well-pleaded facts of the Complaint to be true, Plaintiffs have established that Defendant failed to pay the required contributions and interest. Accordingly, it is proper to enter default judgment against Defendant.

3.  Relief

In addition to finding that Plaintiffs have a basis for relief, default judgment may not be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984). In the instant action, Plaintiffs assert their claim is for a sum certain. (Doc. # 16 at 2.) Therefore, Plaintiffs explicitly request that the Court rule on their Motion without an evidentiary hearing. (*Id.*)

Plaintiffs seek relief under § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), which "requires that the Court award all unpaid contributions to any fund when a fiduciary brings an action to recover contributions under § 515 of the statute." *Boilermaker Blacksmith Nat. Pension Fund v. Fluidynamics Int'l, LLC*, No. CIV.A. 09-2041-KHV, 2009 WL 1559783, at *1 (D. Kan. June 1, 2009). Section 502(g)(2) provides as follows:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce § 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>
> > (A)  the unpaid contributions,
> > (B)  interest on the unpaid contributions,
> > (C)  an amount equal to the greater of:
> > > (i) interest on the unpaid contributions, or
> > > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> > (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> > (E)  Such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under § 6621 of the Internal Revenue Code of 1954.

Plaintiffs seek relief under § (A)-(E) of the statute. (Doc. # 16 at 9–10.) It is notable that § (A)-(D) are mandatory. 29 U.S.C. § 1132(g)(2) (stating that "the court **shall** award . . ." (emphasis added)). Plaintiffs note that they will file an additional motion addressing attorney's fees (Doc. # 16 at 10), and do not seek specific relief under § (E) (*id.*); therefore, the Court will only address relief sought under § (A)-(C) of the statute. The Court examines the monetary relief Plaintiffs sought in the Complaint, as "[a] default judgment must not . . . exceed in amount[ ] what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

15

### a. Unpaid Contributions

With respect to unpaid contributions, *see* 29 U.S.C. § 1132(g)(2)(A), Plaintiffs state that Defendant failed to make the necessary contributions to the four Funds under the CBAs and Trust Agreements for the months of November and December 2017. (Doc. # 1 at 5.) The delinquent payments for these two months totals $15,020.09. (*Id.*) Thus, Plaintiffs seek $15,020.09 in unpaid contributions. (Doc. # 16 at 8.)

Plaintiffs provide sufficient evidence regarding unpaid contributions for the period of November through December 2017. First, Plaintiffs submit the Affidavit of Sandra G. Brown. (Doc. # 16-4.) Ms. Brown is employed as the Delinquency Coordinator for CompuSys of Colorado, Inc. ("CompuSys") which serves as the administrator for all four Funds. (*Id.* at 1–2.) Ms. Brown states that Defendant filed reports for the months of November and December 2017 indicating that it owes contributions to Plaintiffs in the amount of $15,020.09. (*Id.* at 3.) Plaintiffs also submit a statement of Defendant's account with CompuSys as of July 27, 2019. (*Id.* at 6.) The statement further shows that Defendant owes the four Funds contributions for the months of November and December 2017 in the amount of $15,020.09. (*Id.*) However, according to Ms. Brown, Defendant "has failed to pay the contributions due." (*Id.* at 3)

Plaintiffs have thus provided the Court with proof of the damages amount. This amount does not exceed the $15,020.09 requested in the Complaint. *See* Fed. R. Civ. P. 54(c). Therefore, entering judgment against Defendant in the amount of $15,020.09 in unpaid contributions for 2017 is warranted.

### b. Interest on Unpaid Contributions

With respect to interest on unpaid contributions, *see* 29 U.S.C. § 1132(g)(2)(B), pursuant to the CBAs and Trust Agreements, Defendant is liable to Plaintiffs Pension Fund, Annuity Plan, and JATC for interest at the rate of the Federal short-term interest rate for unemployment, plus 2%. (Doc. # 1 at 5.) Defendant is liable to Plaintiff NEBF at the interest rate of 10% annually, compounded monthly, upon the unpaid contributions. (*Id.*)

In their Complaint, Plaintiffs initially sought $1,507.52 in interest accrued upon Defendant's unpaid contributions plus interest accruing after the Complaint was filed. (Doc. # 1 at 6.) In their Motion for Default Judgment, however, Plaintiffs ask for the sum certain amount of $1,819.82 in interest on unpaid contributions, and do not ask the Court to account for interest accruing after the Motion was filed. (Doc. # 16 at 10.) Plaintiffs provide evidence through Ms. Brown's Affidavit and the statement of Defendant's account with CompuSys demonstrating that Defendant owed $1,819.82 in interest on unpaid contributions as of July 31, 2019. (Doc. # 16-4 at 3–4.) Therefore, entering judgment against Defendant in the amount of $1,819.82 for interest accrued upon the unpaid 2017 contributions is warranted. *See Mile High Rodbusters*, 82 F. Supp. 3d at 1245 (relying on an affidavit submitted with the plaintiffs' motion for default judgment to determine a sum certain calculation of interest accrued on delinquent CBA payments).

### c. Liquidated Damages

With respect to additional interest or liquidated damages, *see* 29 U.S.C. § 1132(g)(2)(C), Plaintiffs provide evidence through Ms. Brown's Affidavit that Defendant owes Plaintiffs Pension Fund, Annuity Plan, and JATC for liquidated damages at the rate of 10% of the delinquent contributions, and to NEBF at the rate of 20% of the delinquent contributions. (Doc. # 16-4 at 3–4.) According to Ms. Brown and the statement of Defendant's account with CompuSys, this calculation totals $1,578.78 in liquidated damages. (*Id.*) Therefore, entering judgment against Defendant in the amount of $1,578.78 is warranted.

## IV. <u>CONCLUSION</u>

Based on the foregoing reasons, the Court ORDERS that Plaintiffs' Motion for Entry of Default Judgment Against Defendant is GRANTED. The Motion is Granted with respect to Plaintiffs' ERISA claim, and Plaintiffs are entitled to $18,418.69 in damages against Defendant, consisting of:

(1) principal contributions due for the months of November and December in the amount of $15,020.09,

(2) interest in the amount of $1,819.82, and

(3) liquidated damages in the amount of $1,578.78.

DATED: November 6, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge